## Commonwealth v. Vanhorn

*Howard R. Berninger*, District Attorney, for Commonwealth.

*E. R. Vanhorn*, p. p.

KREISHER, P. J., February 24, 1960.—This is a summary proceeding for an alleged violation of The Vehicle Code that comes before the court for disposition by reason of defendant having waived a hearing before the justice of the peace in accordance with the procedure permitted by the said code. A hearing was held in open court, the testimony has now been transcribed and filed and the facts may be briefly summarized as follows:

On October 22, 1959, at approximately 3:30 p. m., the prosecuting town policeman was on duty in uniform at the intersection of Sixth and Market Streets to assist the school patrol as this intersection is the location of the elementary school and not controlled by traffic lights. The weather was clear, the road was dry and the traffic was normal. The school children were being dismissed and using the northwest corner of the intersection to travel east across Market Street. The

officer was stationed at the center of the intersection, and as defendant approached in his car on Market Street traveling south, the officer faced west to watch the children and extended his right arm straight out from his shoulder with his right palm raised in a northern direction toward defendant's car which was approaching at approximately 15 miles per hour at 100 yards distance.

The car appeared at first to slow down and then it picked up speed, and when it appeared to the officer that defendant was not going to stop, he blew his whistle at about the time defendant's car entered the intersection. Defendant then continued through the intersection and stopped near the southwest corner of the intersection.

The officer proceeded to defendant's car and informed him of the alleged violation which defendant immediately denied, stating he interpreted the officer's signal to mean that east-west traffic should stop and that north-south traffic was free to proceed because the officer was facing west with his arms extended to the north and south.

The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §1221 (d) reads as follows:

"(d) It shall be unlawful for any operator of a vehicle to refuse to comply with any lawful order, signal or direction of a peace officer who shall be in uniform and shall exhibit his badge or other sign of authority."

The code is silent on any specific directions as to how the officer shall give his orders, signals or directions, so we have only the general language to guide us. Therefore the test to be applied is one of reasonableness, prudence and common sense. In other words, we must examine the facts in the light of what a per-

son of ordinary understanding would have done under similar circumstances.

This leads us into the narrow inquiry as to whether or not the officer gave a lawful order, signal or direction which defendant refused to comply with under the circumstances.

Defendant vigorously argues since the officer was facing west toward the children on the curb with his arms extended straight out from his shoulders, he was not bound by the upraised palm, but was reasonably justified in believing the signal was meant to stop all east-west travel giving him the right to continue his southern progress.

Defendant, who is 73 years of age, semi-retired with many years of driving experience, contends since the children were still stopped on the curb and sidewalk, and especially since the school patrol had not started across with their flags, the officer's position permitted him to continue.

Both defendant and the officer testified the signal was first given when defendant's car was approximately 300 feet north of the intersection and at that point started to slow down to 10-12 miles per hour, but when he got 75 or 100 feet from the intersection, he again picked up to 15 or 20 miles per hour when the officer blew his whistle as he was entering the intersection. There were no cars traveling on Sixth Street at the time.

Defendant was the only car traveling south, and the cars coming north on Market Street that later stopped had not yet reached the intersection when defendant went through, so he could not be guided by the other cars on the road.

Defendant insists the usual signal by an officer to stop oncoming traffic is given by facing the traffic with

arms outstretched and not in the manner used by the officer in this case.

On the other hand, the officer contends the Bloomsburg Police Force has been using this signal for years, and this is the first time a motorist failed to obey the signal, so that the average motorist with the least prudence must reasonably understand its meaning.

The officer also explained this signal is used to denote a four-way stop, and they face the children deliberately in order to make sure no child starts across the street before traffic is completely stopped.

The officer's physique is larger than average, which makes his palm a sign not less than 7 by 10 inches which should have been clearly discernible to defendant had he been vigilant in observing the conditions confronting him.

Under Pennsylvania law, every person driving an automobile on a public highway on approaching an intersection is charged with the duty of being highly vigilant and exercising care. This care at street crossings is the motorist's highest duty, and it increases in proportion as the dangers to be encountered increases.

In this case defendant was operating in a school zone with a uniformed officer in the center of the intersection, a school patrol on each side of the street and a large number of school children at the curb and sidewalk ready to cross the street. Under these conditions the highest duty of care was imposed on the motorist, and had he exercised that duty, we think he should have stopped even though he didn't understand the officer's signal, since every element of doubt under these circumstances should have been resolved in favor of stopping.

We have no doubt about defendant's sincerity and that his mistake was an honest mistake. Therefore the

question arises as to whether he should be excused from the penal provisions of the code.

In Pennsylvania every penal statute must be strictly construed, and every element of doubt must be resolved in defendant's favor. The section of the code allegedly violated in this case we quoted above, and we note the offense is predicated upon the operator's refusal to stop when so directed by an officer. In this case, defendant did not refuse to obey; the moment his mind comprehended the officer's direction to do so, he immediately stopped at the sound of the whistle. So viewing the prosecution in this light, and giving defendant the benefit of the doubt, we conclude that under all of the surrounding circumstances, that the court is justified in excusing this defendant from his error in judgment, and holding that he did not refuse to stop when he realized he was ordered by the officer to do so. And therefore he did not technically violate the mandate of the code making it a crime to refuse to stop at the direction of a peace officer. If defendant had proceeded on south without stopping, then he could not be excused. However, under the circumstances, we think defendant was endeavoring to operate his vehicle carefully, and that either he did not understand the officer's signal, or he failed to obey the signal by perhaps having his attention directed to the children at the side of the street.

Defendant testified, and we are inclined to believe him, that he will in the future observe a signal given in this manner, and that this prosecution will make him highly vigilant hereafter.

### Order

And now, to wit, February 24, 1960, we adjudge defendant not guilty, and the above captioned case is dismissed at the cost of the County of Columbia.